[S. F. No. 7081. In Bank.—June 4, 1917.]·

# J. J. RAUER, Appellant, v. EDWARD HERTWECK et al., Respondents.

PRACTICE—NONSUIT—REVIEW OF EVIDENCE.—Upon a motion for nonsuit, the evidence, and every inference that may fairly be drawn from it, must be viewed in the light most favorable to the plaintiffs' claim.

EXECUTION SALE—SETTING ASIDE—INADEQUACY OF PRICE.—Mere inadequacy of price, however gross, is not itself a sufficient ground for setting aside an execution sale legally made. There must, in addition, be proof of some element of fraud, unfairness or oppression, before a court will be justified in depriving the purchaser of his legal advantage. Where, however, the price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to authorize the granting of the relief.

ID.—KNOWLEDGE OF ENTRY OF JUDGMENT—FILING NOTICE OF APPEAL BY ATTORNEY.—The filing by the attorney of a judgment debtor of a notice of appeal from the judgment, and, after its entry, an undertaking to support such appeal, furnish conclusive evidence of the attorneys' actual knowledge of the entry of the judgment against his client, and such knowledge is, in law, the knowledge of the client himself.

ID.—SUFFICIENCY OF NOTICE OF SALE—PERSONAL NOTICE TO JUDGMENT DEBTOR.—An execution sale of land, notice of which was published and posted in strict conformity with the requirements of section 692 of the Code of Civil Procedure, will not be set aside on account of unfairness, merely because neither the judgment creditor, the sheriff, nor the purchasers notified the judgment debtor of the proposed sale.

ID.—SUGGESTION TO PURCHASER TO BID AT SALE.—No inference of impropriety in an execution sale is to be drawn from the fact that the attorneys for the creditor informed one of the purchasers that a sale was to be had, and suggested that he bid.

ID.—SALE OF LAND IN ONE PARCEL.—An execution sale in one parcel of land described as "Lot No. 7 of the Linda Vista Tract" cannot be held irregular because the land was not offered in subdivisions, where there was nothing in the evidence to indicate that it consisted of other known lots or parcels.

ID.—SEPARATE JUDGMENTS WHEN AUTHORIZED.—The rule that there can be but one final judgment in a case is inapplicable to actions in which separate and independent relief is sought against several defendants.

ID.—QUIETING TITLE — SEPARATE JUDGMENTS AGAINST DEFENDANTS — COLLATERAL ATTACK.—Where, in an action to quiet title against two

defendants, a default judgment is taken against one and thereafter a separate judgment is taken against the other, it will be presumed, on a collateral attack on the latter judgment, that the defendants had no such unity of interest or claim making it improper to render several judgments against them.

APPEAL from a judgment of the Superior Court of Fresno County.   H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

H. M. Anthony, for Appellant.

S. L. Strother, and G. L. Aynesworth, for Respondents.

SLOSS, J.—This action was brought to set aside an execution sale of real estate. The court below granted the motion of the defendants for a nonsuit, and thereupon entered judgment in their favor. The plaintiff appeals from the judgment.

In October, 1910, one Webb brought an action against Rauer and others to quiet his title to certain lands in Fresno County, and, in June, 1912, obtained judgment against Rauer quieting his title, and for costs amounting to $15.90. On December 19, 1912, an execution was issued on said judgment for costs. The sheriff levied the writ upon a tract of real estate in Fresno County, described as "Lot No. 7, Linda Vista Tract," belonging to Rauer, and sold said tract on the eighteenth day of January, 1913, to Hertweck and Sparkman, the defendants in this action, for the sum of $46. The sheriff duly made his return on said sale, and, on the twentieth day of January, 1914, issued his deed to Hertweck and Sparkman, the purchasers at the execution sale. The complaint alleges that on the day of the execution of the sheriff's deed, and long prior thereto, the plaintiff was the owner of the land so sold, and that the same was worth between $100 and $150 per acre. He further alleges that he was ignorant of the judgment against him, of the issuance of the writ of execution, of the sale of the property, and of the issuance of the sheriff's deed, until about the fourth day of February, 1914; that no one ever notified him of the proposed sale of his property, although the defendants in this action, the attorneys for the judgment creditor, and the sheriff knew that plaintiff's residence was at the city of San Francisco. It is alleged that the writ of execution was

issued and levied, and the sale made, with the intent to prevent all knowledge thereof on the part of plaintiff until after the sale and the issuance of the deed thereon; and that all said acts were intentionally concealed from the plaintiff for the purpose of depriving him of the whole of his land for a mere nominal sum. In addition, it is alleged that the sheriff did not offer the land for sale in any smaller parcel than the twenty acres.

The plaintiff brought this action on February 13, 1914, offering by his complaint to refund to the defendants the amount paid by them to the sheriff.

By their answer, the defendants, Hertweck and Sparkman, allege that since the execution of the deed they have been the owners of the land. They deny that the land was worth any more than $35 per acre, and deny that plaintiff was ignorant of the judgment, of the execution, of the sale, or of the issuance of the deed by the sheriff, as alleged in the complaint. They further allege that they had no part in or concern with the issuance of the execution, or the levy upon or the sale of said premises, other than to attend at said sale, and become purchasers thereat; and that if, in said proceedings, there was any intent to prevent plaintiff from having knowledge thereof, or if such knowledge was intentionally concealed from plaintiff, they, said defendants, had no part therein, and were in no way responsible therefor. They also deny the allegation that the land was not offered for sale in subdivisions.

Upon a motion for nonsuit, the evidence, and every inference that may fairly be drawn from it, must be viewed in the light most favorable to the plaintiff's claim. (*Goldstone* v. *Merchants' Ice etc. Co.,* 123 Cal. 625, [56 Pac. 776]; *Hanley* v. *California Bridge etc. Co.,* 127 Cal. 232, [47 L. R. A. 597, 59 Pac. 577]; *Estate of Ricks,* 160 Cal. 450, [117 Pac. 532].) But, giving to the plaintiff every benefit to which he is entitled under this rule, we think it must still be held that he failed to establish a case entitling him to relief.

There was testimony in support of the allegation of the complaint relative to the value of the land. The twenty acres must, therefore, be taken to have been worth between two thousand dollars and three thousand dollars. The sum bid at the execution sale was only $46. Clearly, therefore, the purchase price was but a small fraction of the value of the property. It is, however, well settled in this state that mere inade-

quacy of price, however gross, is not itself a sufficient ground
for setting aside a sale legally made.   There must, in addition,
be proof of some element of fraud, unfairness, or oppression,
before a court will be justified in depriving the purchaser of
his legal advantage.   Where, however, the price obtained is
greatly disproportionate to the actual value, very slight evi-
dence of unfairness or irregularity will suffice to authorize the
granting of the relief.   These rules are clearly stated, and the
authorities cited, in *Odell* v. *Cox*, 151 Cal. 70, [90 Pac. 194].
The same principles are declared and applied in *Winbigler* v.
*Sherman, ante,* p. 270, [165 Pac. 943], recently decided in this
court.

What, then, does the proof in this case show with respect to
the unfairness of the sale?   The plaintiff, Rauer, testified that
he had no knowledge of the judgment, or of the proceedings
on execution.   But it appears without dispute that on June
21, 1912, eleven days after the entry of the judgment, Mr.
H. M. Anthony, the attorney representing him in the action of
Webb *v.* Rauer (and who also represents him here), filed, on
behalf of Rauer, a notice of appeal from said judgment, and
an undertaking to support such appeal.   These facts furnish
conclusive evidence that Rauer's attorney had actual knowl-
edge of the entry of the judgment against his client, and such
knowledge is, in law, the knowledge of Rauer himself.   (6
C. J. 638; *Mabb* v. *Stewart,* 147 Cal. 413, [81 Pac. 1073].)
Besides this, there is uncontradicted evidence that, on June
17, 1912, the attorneys for Webb wrote to Rauer's attorney
requesting payment of the judgment for the costs; that they
mailed him a copy of the bill of costs, and received a letter of
acknowledgment; and that, in October, 1912, they again wrote
him asking that his client pay the costs.   Both requests for
payment were ignored.   The execution was not taken out
until two months after the sending of the second letter.

The notice of sale was published and posted in strict con-
formity with the requirements of section 692 of the Code of
Civil Procedure, but no one gave Rauer or his attorney per-
sonal notice that the sale was to take place.   The sheriff and
the under-sheriff testified that they knew who Rauer was, and
could have found his address.   Hertweck, one of the defend-
ants, had done business with Rauer.   He knew that Rauer's
place of business was in San Francisco, and that he was
reputed to be a man of means.   Sparkman, the other defend-

ant, had never heard of Rauer. He testified that he first heard of the proposed sale of the land when one of the attorneys for Webb told him that there was to be an execution sale, and asked him if he did not want to bid.

The evidence which we have summarized constitutes plaintiff's entire showing on the question of the fairness of the sale. We are unable to find in it anything going to show fraud, unfairness, or oppression. The main stress of the appellant's argument is put upon the point that neither the judgment creditor, the sheriff, nor the purchasers notified the judgment debtor of the proposed sale. But there was no obligation upon them to give him any such notice. The statute defines how notice of an execution sale must be given. To say that a sale may be set aside because some other notice was not given would be to amend the statute, and this we cannot, of course, do. When the officer conducting the sale has done the acts prescribed by the code, he has done his full duty. He is not required to search for the debtor and give him any further notice than that which the law exacts. Nor is any such duty imposed upon the judgment creditor. Much less is one who may contemplate bidding at an execution sale called upon to concern himself with the question whether the debtor has actual knowledge of the proceeding. No inference of impropriety is to be drawn from the fact that the attorneys for the creditor informed one of the defendants that a sale was to be had, and suggested that he bid. The judgment debtor is benefited rather than harmed by any action which tends to increase the number of bidders.

It is argued that the complaint alleges, and the answer fails to deny, that the defendants knew that the writ was issued, and the sale made, with the intent to prevent knowledge thereof by the plaintiff, and to deprive him of his land. We think the complaint, properly construed, does not charge that the defendants knew of the alleged intent. But, in any event, the answer was clearly designed to dissociate the defendants from any connection with the purpose (which, so far as they could know, may have been entertained by others) to take an unfair advantage of the plaintiff. This may fairly be interpreted as a denial of any knowledge on their part, of such purpose, and it was apparently so treated at the trial.

The attempt to show unfairness in the sale comes down simply to this: that the execution sale was regularly made

upon due statutory notice, but that the judgment debtor did not, in fact, know of the sale, and no one gave him notice of it. He did, however, know that a judgment had been entered against him, and must be deemed to have known that his property might be levied on at any time. He failed to pay the judgment, and took no steps to protect his property until many months after the entry of judgment. He then found that a sale had been had, and that the time for redemption had expired. The resulting loss can more properly be attributed to his neglect of his own interests than to any unfairness on the part of the judgment creditor of the purchasers. The case presents none of the peculiar circumstances of oppression or inequitable conduct which were held, in *Odell* v. *Cox* and in *Winbigler* v. *Sherman*, to justify relief from a sale made for an inadequate price.

It is claimed that the sale was irregular because the land was not offered in subdivisions. Assuming that the evidence shows that the sale was made as claimed by the appellant, there is no evidence that the situation was such as to require the sheriff to sell the land otherwise than as a whole. Section 694 of the Code of Civil Procedure provides that "when the sale is of real property, consisting of several known lots or parcels, they must be sold separately." The land is described in the record as "Lot No. 7 of the Linda Vista Tract." There is nothing to indicate that it consisted of other known lots or parcels. A sale in parcels was not, therefore, required. (*Gleason* v. *Hill*, 65 Cal. 17, [2 Pac. 413]; *Connick* v. *Hill*, 127 Cal. 162, 165, [59 Pac. 832]; *Meux* v. *Trezevant*, 132 Cal. 487, [64 Pac. 848].)

Finally, the appellant makes the point, raised by an amendment to his complaint, that the judgment upon which the execution was issued was void. It appears that the original action of Webb was brought against two defendants, Dewey Navigation and Trading Company and Rauer, for the purpose of quieting Webb's title to certain lands. Dewey Navigation and Trading Company defaulted, and Webb took judgment against it on March 28, 1912. This judgment, it is alleged in the amendment, is still in force. Rauer answered, and thereafter Webb took against him the judgment which formed the basis of the execution. The appellant's contention is that since, as this court has often stated, there can be but one final judgment in a case, the action was disposed of by the

judgment against Dewey Navigation and Trading Company, and that the later judgment against Rauer was void. Without regard to other possible answers to the contention, the rule relied upon has no application to actions in which separate and independent relief is sought against several defendants. The court may, under the express provision of section 579 of the Code of Civil Procedure, render judgment against one or more of the defendants, "leaving the action to proceed against the others, whenever a several judgment is proper." (*Cole* v. *Roebling Construction Co.*, 156 Cal. 443, [105 Pac. 255]; *Bell* v. *Staacke*, 159 Cal. 193, [115 Pac. 221].) It does not appear that the two defendants in the suit brought by Webb had any unity of interest or claim making it improper to render several judgments against them. On this collateral attack on the judgment, it will be presumed that they did not.

The judgment is affirmed.

Shaw, J., Melvin, J., Henshaw, J., and Angellotti, C. J., concurred.